and that's Recinos-Ulloa v. Merrick Garland. You may proceed. You're muted. And you need to unmute. Okay there we go. No matter how many of these Zoom calls we do, we all do the same thing. I have two mute buttons, the mic and the screen. Good morning, Your Honors. May I please the court, Karen Monreal, on behalf of the petitioners Gloria Recinos-Ulloa and Kevin Rivera Recinos. I would like to reserve three minutes for rebuttal. You have a clock there and I'll also try to help you. Thank you. Your Honors, the petitioners in this case have a target on their back. So we have a He was essentially ran out of the country. He was extorted, beaten and threatened to be killed by the MS-18 gang members. He was even given an appointment for which he knew if he attended that appointment, he would be murdered. When the petitioner was able to send her eldest son away, the MS-18 started to send people to the petitioner's home to gang members and started surveilling their home day and night. They were circling their house. They were following them everywhere. They were stalking them. May I, I don't want to interrupt your flow, but I think we're pretty quite familiar with his background. It seems to me that the unanswered question here really is what is the IJ's obligation given that there's no derivative cat relief? And of course he had a lawyer. So at what point in the proceedings do you think the IJ had the obligation to inform that there was no derivative cat and you needed a separate application? Well, Your Honor, the IJ has that obligation to be familiar with the record. So at that point, the IJ must have known that there was only one application submitted. And during the testimony, the petitioner testified to how he was beaten several times. He was taken off of us and he was cut in the stomach and that he was chased down by the MS-18 gang that he was, that they, he was given. So I mean, my question is probably a little more narrow than that. Was it at that point, was it when the IJ realized there was no separate cat application or was it after the testimony or at some other point that the obligation would have arisen in your view? The obligation would have arisen after the testimony. Once the IJ found that relief was plausible. So in, and I will quote to the United States Chief Rojas Pedrosa, wherein the court said that a failure to advise can only be excused when petitioner's eligibility relief is not plausible. So it wouldn't, the IJ's duty to petitioner would have not arisen at the time that the IJ noticed that there was no application filed, rather when the IJ noticed that relief was plausible. And this was after the testimony. The petitioner testified as to the death threats that he received, the actual injuries that he received. It was at that point that the IJ should have noticed and should have advised him that he wasn't eligible because there was no application filed on his behalf. There is no carve out, there is no other exception written now in the statute where it says that there's an exception that applies when the petitioner is represented by counsel. The only exception exists when relief would not be plausible. And this was not the case. Relief was certainly plausible. He was, the petitioner testified as to why he was afraid of the police and the country conditions support that. So how far does that obligation go for the IJ to give legal advice when the petitioner is already represented? Well, Your Honor, it wouldn't necessarily be legal advice. It was, it stems from both the duty of the IJ to assure that the petitioner has, his rights have not been violated, his due process rights have not been violated. The IJ continued the hearing. The IJ went ahead and submitted his decision knowing that at any point the IJ could have stopped those petitions. The petitioner at that point would not qualify, that even though he was testifying. No, no, I understand all that. My question is, this is legal advice. I mean, what you're asking for is out of this court to say, well, the IJ should have told him that he needed to file a separate CAT application. That sounds like legal advice to me. And I'm having, my question is, at what point does the IJ have an obligation to tell someone about relief that might be available or to tell someone that his lawyer is not doing a good job? I mean, how do we know what the IJ is required to say and what the IJ may say but is not required to say in terms of giving legal advice? So, Your Honor, I think that this case particular has very unique circumstances. The petitioner was testifying as to the different situations, different attacks that he was subjected to. And the attorney in this case did not submit the I-580, the application, which he should have. But when he didn't and the petitioner continued to testify about the attacks that he received, I believe that it was at that point that the IJ should have given that advice and told the petitioner that he would not qualify. It is true that the petitioner was subject to a set of laws that govern ineffective assistance of counsel. And the IJ continued these hearings irrespectively of that. As I stated, there is no carve-out for people that are represented by counsel. What is, as you're going through the proceeding, what if he hadn't applied for asylum and by some miracle the case was within the one-year bar? Would the IJ be required to say, you know, you could still file for asylum if you rush down there and file your petition. Would that be required? Given the circumstances, Your Honor, I think that the duty arose when the IJ noticed that he would have an obligation if there was a one-year issue and the one year was about to be up. Because at that point, the judge would not know that the facts or the testimony would support eligibility for relief. I believe that is at the time of the testimony. At the time of the testimony, in hearing petitioner's testimony and eligibility for relief arises, then it is the IJ's obligation to advise the petitioner of this eligibility for relief. So is there any constraint on the principle that you're advancing that basically the IJ is there monitoring this plausibility of relief every minute and if the IJ sees a procedural error, the IJ then has to pipe up and say, you have this problem. Is there any limit to the rule? What would be the principle you would have us adopt? Your Honor, well, we would have, I go back to it. It really depends on what It doesn't depend. This is a case in front of us. What is the principle that comes out of the case if we adopt your position? Well, the IJ has this responsibility to advise the petitioners given the testimony of eligibility for relief. All right. Would you like to save the remaining time for rebuttal? Yes, Your Honor. Thank you. Ms. Lee? Good morning, Your Honors. May it please the Court, Jennie Lee on behalf of the Attorney General of the United States. There is no due process violation in this case. The immigration judge did not have a duty to inform the male petitioner that he needs to file his own separate patent application. The cases the petitioner cites to in her brief deal with illegal reentry type cases where the noncitizens at the initial immigration proceedings were either pro se or one attorney represented a number of the noncitizens. In those cases, the Court held that the noncitizen's waiver of appeal was neither knowing nor intelligent. Here, we have a completely different situation. Petitioners were represented at most of their hearings. They were represented at every single hearing aside from the first one. At the August 2016 hearing, they were actually represented by two attorneys. And Mr. Harris indicated that he would like to seek a guardianship matter for the male petitioner. And Mr. Harris stated that the male petitioner would turn 18. So the petitioner's counsel was fully aware that his client was going to age out. Then at the next hearing on January 17th, Mr. Harris entered pleadings and indicated that he was going to seek asylum for the female petitioner with the male petitioner being a writer. And Mr. Harris specifically stated that he was not seeking a juvenile immigrant status for the male petitioner. So his attorney knew full well that his male client, that Mr. Riviere-Rosinos was going to age out of cat protection. And yet his attorney made the conscious litigation decision to not file a separate cat application. Would he, would he, was he required as a juvenile to have a separate cat application? I believe so. So all that wouldn't matter, the fact that he's going to age out. That's kind of unrelated to the fact that there is no derivative status on a cat application. So the things you're talking about would seem to me not matter here. I believe that you have to, I'm not 100% certain, but I believe for cat, you need to be, that if it's a minor, then they could write on the parent's cat application. You're not, you're representing the government and you can't tell us whether or not he needed an independent cat application even as a minor? I apologize, Your Honor, I do not know that information. Well, that would matter here, wouldn't it? Well, it wouldn't matter because at the time when he did have his hearing, he was 18 and he did need to have his own cat application. So I think your argument is very sympathetic about the fact that he had a lawyer. But then I read our cases and they talk about, for example, in Moran Enriquez says that the IJ's obligation to inform an immigrant of a parent eligibility exists regardless of whether represented by counsel. And we have several cases along those lines. So while it is an appealing argument and one that makes practical and logical sense, that actually doesn't seem to be the law of the circuit. How do you navigate those cases that say this issue is not dependent on representation or non-representation? Yes, Your Honor. So there are two types of cases which deal with the due process issue. We have the legal re-entry type cases and then we also have pure due process cases. And in Vargas-Hernandez v. Gonzalez, which is an immigration case, the court held where  there is a fair opportunity to be represented by counsel to prepare an application for relief and to present testimony and other evidence in support of the application, he or she has been provided with due process. You know, that's not quite the question in front of us. The question is actually fairly narrow with respect to obligation to provide legal advice when represented by counsel. And that is not as to tactics, not as to objections, but simply as to whether or not there is potential eligibility for relief. This can be a fairly narrow case. And Judge McKeown has already cited to you some of our case law. We've got a fair number of cases that say if the question is eligibility for relief, and that's the legal question, that the IJ is required to tell the applicant, even if represented by counsel. How do you get around those cases? So if we were to talk about eligibility for relief, in this case the immigration judge heard both petitioners' testimony, looked at all the evidence, and found that relief was not going to be given to the female petitioner. So he has already looked at the eligibility for the relief. But the son had a very different factual predicate for a cat, didn't he? I mean, what happened to the son isn't what happened to the mother. Exactly, Your Honor. There are factual differences in that the male petitioner may have been harmed, and it might rise to the level of torture. But the court has previously held that past torture is not indicative of future torture, is what we look for for cat applications. With respect to the son's torture at the hands of police, is that relevant to his mother's potential fear of torture in terms of her cat claim? So he did not testify that he was tortured by police. He did say that he was hit by police. But that really was not developed in his testimony. It was a very quick... There was clear evidence, was there not, with respect to the torture of the son, not as to the mother. And I guess my question is, does her fear of torture include the fear of torture of her child? I believe it could, Your Honor. But in this case, the petitioner, the female, Ms. Racinocia, her evidence falls short of demonstrating the particularized and more likely than not threat of future torture needed to obtain cat relief. And this is based on the evidence. She specifically testified that her father was staying at their house, which was constantly being surveilled by gangs, and he even left the door open to make it look like they were still there. And the father still lives in El Salvador, but there's no indication that he was ever threatened or that gangs contacted him, even when he was staying at their house. Well, you know, the mother... I agree with you, at least preliminarily, on the mother. But when we talk about the son, we're talking about That's very different than the mother's case. If he needs an independent cat application, which I think, as I read the law, he does, then that's the testimony we should be benchmarking on plausibility, not the mom's testimony. Do you agree with that? With regard to the plausibility, I would think that you would have to look at both, because we're talking about two people testifying on behalf of... Well, in this case, it was just on one cat application, but if we were to look at both, you would have to say... To look at their parent eligibility for the son, you would have to look at both. Why? And if you do, I think... Why do you need to look at the mother if the son needs his own, as the IJ ultimately rules? Because for the evidence, you want to have as much evidence as possible, and so you have both here. And that's why for the mother's application, the son testified as well, because you want both. Let me try to focus you just a little bit. If we're looking at the son, and if we get past the question as to whether or not the IJ is required to instruct as to eligibility for relief, I'm assuming that that's so. Let's look at the evidence with respect to the son. Not Christian, he's somewhere else, but Kevin. We know from the record, and the IJ lays it out very clearly, that at one point, after he gets off the bus, he's stabbed with a knife in the stomach, in the arm, and in the hand. We know that at a later time, he's beaten. We know that at a later time, he's hit with a board that has nails in it, and he's suffered scars. And we know from him that the military is involved in some of these beatings. That suggests to me that he has a plausible CAT claim. It may or may not be a winning claim, but it strikes me that it's a plausible claim. Do you disagree? So, Your Honor, the facts that you relayed are very sympathetic. However, some of those harms, most of those harms, like the knifing incident at the bus, the stick with the nails, those were at the hands of gang members. His testimony with regard to what the police did to him, he said they hit him with sticks, but he did not elaborate as to what happened. So, we can't say that what happened at the police's hands rose the level of... But let me make the argument, if he has competent counsel, that will clearly be made is that he's being subjected to this behavior, and the authorities are unwilling or unable to protect him. And the harm inflicted by the soldiers suggests that they are unwilling or unable to protect him from the gang behavior, so that I think we look at both what the gang members did to him and what the police did to him, or the military did to him. So, we would look at both what the police did to him and the gangs, but in this case, we do not know... So, we know that if he was tortured, he was tortured at the hands of the gangs. But we know that his family never reported that incident to the police officers, so we don't know if they would have acquiesced or if they would have actually looked into it. Well, we have a fairly strong indication, given the fact that he's testified that the soldiers... The question, were they soldiers of the El Salvadoran Army? He specifically asked, and he responds, one time they were soldiers, several times it was police officers. From that, we may, I think, infer... In fact, it's a fairly strong evidence that they're not going to protect him from the gang. Well, the agency read the record differently and they found that the record did not compel that conclusion. Sorry, for the mother... Well, the agency, as far as I can tell, the BIA says the evidence against the mother is the same as the evidence against the son, and that's clearly wrong. Well... The evidence is different, obviously. But if the court is to say that immigration judges now have a duty to second-guess the attorney... Petitioners who are clearly represented second-guess what their attorneys are doing or not doing, that seems to be a heavy responsibility to put on immigration judges who are supposed to be looking at all the evidence and weighing the evidence to determine if the person has sufficient evidence to establish eligibility for relief. And then on top of that second-guess everything the attorney's doing or not doing, that seems to be... Well, it's not a second-guess, because we already have cases that say, with respect to appeal rights and with respect to leaving the country, that the I.J. has this obligation. So let me maybe turn it around in a different way. Do you know of any case in this circuit or any circuit that would affirmatively say, when you're in this situation and the I.J. knows of a death knell procedural error, that the I.J. has no obligation to inform the parties? Is there any such case that you're familiar with that we should look at? I am not familiar with any such case, Your Honor. All right. Thank you. We appreciate your time. I think there's just a small amount of rebuttal time left. Thank you, Your Honor. So in this case, the petitioner, there is no derivatives in a CAAT application. So regardless of what age the petitioner was, he did need his own application. So that's number one. And then the question here really is whether... Can I ask you now? Could he, time-wise, could he go back and file his own CAAT application at this point? At this point, if the record were to be remanded, yes, he could file his own CAAT application, certainly. Did you ask for the case to be held in abeyance so he could do that? There's not a time limit on that, right? No, there's no time limit, Your Honor. I have not conferred with the government attorney about this. I'm just trying to understand. We're in the middle of the proceeding there. He misses... He doesn't have an independent CAAT application. The IJ tells you that in the decision. And then before the appeal to this court, nothing is done to try to rectify his lack of an independent CAAT application. Is that right? Correct, Your Honor. The government's position has always been that the petitioner was out of time, so therefore... Well, let me ask you, is the petitioner out of time, in your view? No, Your Honor, no, definitely not. Thank you. I think we have your argument well in mind, and the case just argued is submitted. Thank you. Thank you.
judges: McKEOWN, FLETCHER, Bennett